UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DASHRATH P., | ) |
| Plaintiff, | ) No. 19-cv-6769 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dashrath P.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [dkt. 14] is DENIED; Defendant's motion for summary judgment [dkt. 22] is GRANTED.

**1. Background**

   **1.1. Procedural History**

Plaintiff was born in 1974. [Administrative Record ("R.") 73.] Plaintiff filed for both Disability Insurance Benefits and Supplemental Security Benefits (on May 14, 2016 and June 24, 2016, respectively) alleging a disability onset date of November 27, 2015. [R. 20, 240-41, 246-54.] An administrative hearing was held on May 29, 2018. [R. 42-72.] Plaintiff was represented by counsel at the hearing; a Gujurati interpreter was present at the hearing and a vocational expert ("VE") testified. [R. 42.] On September 4, 2018, Administrative Law Judge ("ALJ") Kimberly S. Cromer issued an unfavorable decision. [R. 20-32.] Plaintiff requested Appeals Council review, which was denied on

---

[1]   In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2]   Plaintiff has filed a Memorandum in Support of Reversing or Remanding Agency Decision [dkt. 14], which the Court construes as a motion for summary judgment.

August 22, 2019. [R. 1-6.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. Plaintiff, through counsel, filed the instant action on October 11, 2019, seeking review of the Commissioner's decision. [Dkt. 1.]

### 1.2. Medical Background

Plaintiff, a former cashier [R. 286, 291] in his mid-forties [R. 281] with a 10th grade education [R. 285], claimed he could no longer work as of November 27, 2015 [R. 281], as a result of numerous problems with his spine, high blood pressure, and diabetes [R. 284, 321, 334].

Plaintiff testified he stopped working after he developed pain and tingling in his right hand. [R. 52.] X-rays and MRI's were taken, and Plaintiff was sent to physical therapy. [R. 52-53.] Plaintiff was later sent to a chiropractor, but Plaintiff felt the chiropractor made his pain worse. [R. 53.] Plaintiff ultimately underwent spinal surgery (a C1 laminectomy and C1-2 posterior arthrodesis with autograft and instrumentation) on June 15, 2016. [R. 837-39.] Plaintiff testified that after the surgery, he endured a lot of pain, and was unable to sit for more than two hours before having to lie down. [R. 55.] Plaintiff also feels pain in his low back, which radiates to his left leg, and sometimes the right; this pain also feels best when laying down. [R. 60-61.] Plaintiff testified he gets headaches several times a week, which can last a few hours. [R. 62.] When he gets a headache, he has to sleep. [R. 63.] Plaintiff has anxiety and depression, for which his doctor prescribes medication. [R. 65.] Plaintiff' feels his depression began along with his neck pain and is exacerbated by the fact he cannot do things he used to enjoy. [R. 65-66.]

One of Plaintiff's treating physicians, Dr. Ritesh Patel, M.D., completed a March 22, 2018 Physical Residual Function Capacity Statement in which he opined Plaintiff had a fair prognosis for his chronic back pain and chronic neck pain diagnoses. [R. 938-41 at 938.] On the other hand, he also opined that Plaintiff could only sit for less than 1 hour in an 8-hour workday, and could similarly only stand/walk for less than 1 hour in an 8-hour workday. [R. 939-40.] Dr. Patel felt Plaintiff's back pain

2

and neck pain would affect Plaintiff's ability to work at a regular job on a competitive and sustained basis, and that Plaintiff would likely be absent five days or more per month due to his impairments. [R. 941.] When asked what items he based his opinions upon, Dr. Patel did not indicate he based his opinions on Plaintiff's history and medical file; progress and office notes; physical therapy reports; physical examinations; laboratory reports or other tests; X-rays, CT scans, or MRIs; consultative medical opinions; or psychological evaluations, tests, reports, or opinions. *Id.*

At the initial level, state-agency medical consultant Charles Kenney, M.D., reviewed the evidence and concluded that Plaintiff had severe impairments from degenerative disc disease ("DDD"), obesity, and osteoarthrosis and allied disorders. [R 74-78, 87-89, 91.] Dr. Kenney assessed Plaintiff's residual functional capacity residual functional capacity ("RFC") and determined Plaintiff could do light work with a number of additional limitations. [R 79-83, 92-96.] On reconsideration, the agency received additional evidence, and state-agency medical consultant, Julio Pardo, M.S., similarly concluded Plaintiff had severe impairments from degenerative disc disease, obesity, and osteoarthrosis and allied disorders. [R. 102-07, 118-24.] Dr. Pardo assessed Plaintiff's RFC and also found that Plaintiff could do light work, with a number of additional limitations. [R. 109-13, 125-29.]

**1.3. The ALJ's Decision**

On September 4, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 20-32.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 27, 2015. [R. 22.] At Step Two, the ALJ found that Plaintiff had the severe impairments of history of a skull odontoid fracture;[3] status post cervical spinal fusion at C1-C2; lumbar degenerative disc disease with L4-5 left lateral disc herniation generalized bulging and L5-S1 chronic herniated disc; diabetes mellitus; obesity; depression; and anxiety. [R. 23.] The ALJ

---

[3] Odontoid relates "to the toothlike odontoid process of the second cervical vertebra." *Stedman's Medical Dictionary*, Entry No. 622480. By background, in 1990, at age 16 in India, he fell from a tree striking his head. [R. 812, 1375, 1464.]

3

also determined Plaintiff had the following nonsevere impairments: history of acute bronchitis with an intermittent cough; hypertension and high cholesterol; vitamin D deficiency; and a history of opioid withdrawal.[4] [R. 812, 1375, 1445, 1464.] *Id.* At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 23-25.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: he can only occasionally reach overhead bilaterally; he cannot work at unprotected heights or around hazardous machinery; he cannot crawl, or climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs, and balance, stoop, kneel, and crouch; he is to avoid concentrated exposure to vibration and temperature extremes; he is limited to positions with frequent bilateral handling and fingering. [R. 25-30.] At Step Four, the ALJ found Plaintiff unable to perform his past relevant work; however, other jobs existed in significant numbers in the national economy that Plaintiff could perform. [R. 30-31.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 31.]

**2. Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the

---

[4] The record gives no additional information about Plaintiff's opioid withdrawal other than he was in withdrawal with diarrhea symptoms and advised to taper off his medication slowly. [R. 1445.]

4

Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### 3. Discussion

Plaintiff asserts the ALJ committed three errors in her analysis of Plaintiff's claims: (1) she improperly failed to accommodate Plaintiff's limitations in the use of his upper extremities; (2) she improperly failed to accommodate Plaintiff's concentration and attention deficits; and (3) she improperly rejected the treating surgeon's opinion. The Court disagrees, and addresses each of these contentions in turn.

#### 3.1. Upper Extremities

Plaintiff takes issue with the ALJ's statement that "there was no indication of inability to use bilateral upper extremities," which Plaintiff alleges is false. [Dkt. 14, p. 8 (citing R. 23).] However, Plaintiff has taken this statement out of context. The full text of this particular statement relates to the ALJ's consideration of whether Plaintiff met Listing 1.04, not whether Plaintiff had any upper extremity restrictions at all: "[t]he claimant representative tried to suggest that Listing 1.04 was met; however, there was no indication of inability to use bilateral upper extremities." [R. 23.] In fact, the ALJ *did* ultimately find Plaintiff had some inability to use his bilateral upper extremities when she restricted Plaintiff's use of his arms in the RFC (*i.e.*, "only occasional bilateral overhead reaching" and "frequent bilateral handling and fingering"). [R. 25.] This is far from the "explicit refusal to accommodate Plaintiff's upper extremity deficits" Plaintiff alleges it to be. [Dkt. 14, p.8.]

In addition to acknowledging Plaintiff's alleged problems reaching overhead and numbness in

5

his right hand [R. 26], the ALJ analyzed the evidence of record concerning Plaintiff's bilateral upper extremities. The ALJ acknowledged that Plaintiff's February 16, 2015 cervical spine MRI demonstrated multilevel mild to moderate disc bulging. [R. 26 (citing R. 1390).] The ALJ noted that when Plaintiff was examined on June 7, 2016, he had normal sensation, and motor strength of 5/5. [R. 27 (citing R. 814, 817).] Moreover, after Plaintiff had spinal surgery, he was described as stable and doing well with no neurological deficits and with motor strength 5/5. [*Id.* (citing R. 901).] Again, when Plaintiff saw his treating physician, Dr. Ritesh Patel, M.D., on August 19, 2016, he had no joint pain of stiffness in the extremities and exhibited normal motor strength, and sensation. [*Id.* (citing R. 917).] Five weeks later on September 27, 2016, Plaintiff once again exhibited normal strength in the arms with normal reflexes and another treating physician, Dr. Kanu Panchal, M.D., concluded Plaintiff's recent MRI confirmed excellent decompression of the spinal cord, and Plaintiff was to continue with his home exercise program. [*Id.* (citing R. 1367).] Plaintiff also received physical therapy and was documented as improved.[5] [*Id.* (citing R. 947, 949).] In March 2017, Plaintiff reported to Dr. Patel normal gait, motor strength, sensation, and balance with no numbness, tingling, muscle weakness, or joint pain of stiffness. [*Id.* (citing R. 1396, 1398).] At subsequent exams, Plaintiff continued to have normal motor strength and no neurological deficits. [R. 28 (citing R. 1438, 1442).] At an exam on February 14, 2018 plaintiff's arm symptoms had improved and his motor strength was 5/5 in the upper extremities with normal sensation. [*Id.* (citing R. 1465).] In addition to this evidence, the ALJ

---

[5] Plaintiff argues the ALJ misrepresented the results of Plaintiff's physical therapy by noting these records indicate Plaintiff "was documented as improved." [Dkt. 14, p. 10 (citing R. 27).] These records are a mixed bag. They do indicate Plaintiff "partially met" improved levels in ambulation, instrumental activities of daily living ("IDAL"), lifting, posture, and moving between sitting and standing positions. [R. 948-49.] Thus, these records do literally indicate Plaintiff was documented as improved, as noted by the ALJ. However, these records also reveal Plaintiff was "discharged from skilled physical therapy as benefits have expired and due to an objective lack of progress." [R. 948.] Basically, these records support both the ALJ's point that Plaintiff had improved with Physical therapy and Plaintiff's point that despite this improvement, the conditions that sent him to physical therapy in the first place still persisted at a lesser level. That Plaintiff's conditions persisted does not negate that the physical therapy records also document improvement in his conditions. Moreover, the ALJ never denied Plaintiff's conditions persisted – in fact, she did find severe impairments and a number of functional restrictions applied to Plaintiff. This "misrepresentation" argument is a quibble over a technicality; the Court will not remand this case on a technicality that would not alter the ALJ's ultimate determination.

also gave great weight to the opinions of the state-agency physicians who found Plaintiff capable of light work with no manipulative limitations save for carrying 10-20 pounds. [R. 29, 79-82, 92-96, 109-113, 125-29.]

The ALJ correctly noted the evidence consistently documented that Plaintiff exhibited normal strength and reflexes with no signs of atrophy with no clinical findings assessing neurological deficits. [R. 28.] Additionally, the ALJ considered that Plaintiff's symptoms improved following surgery and treatment and treating sources concluded that Plaintiff's symptoms were managed with physical therapy and medications. *Id.* Thus, the ALJ restricted Plaintiff to only occasional bilateral overhead reaching and frequent bilateral handling and fingering. [R. 25.] This accommodation flies in the face of Plaintiff's contention that the ALJ failed to accommodate his upper extremity limitations due to the absence of corroborating evidence. [Dkt. 14, pp. 10-11.] The ALJ *did* accommodate Plaintiff's limitations, just not to the extent he wanted. But the question for the Court is not whether the evidence could support greater restrictions, but whether substantial evidence supports the restrictions that the ALJ found. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court finds it does.[6]

As to the alleged lack of evidence corroborating Plaintiff's limitations, the ALJ is instructed by the regulations to consider the extent to which a claimant's subjective symptoms are corroborated by the record, including the objective evidence. *See* 20 C.F.R. § 404.1529 (effective March 27, 2017). If a claimant's alleged symptoms are not corroborated by the record, the ALJ is free to discount them because of the lack of corroboration. *Id.* What the ALJ is not supposed to do is rely solely on objective evidence. SSR 16-03p. Here however, the ALJ made clear that she was not relying solely on objective

---

[6] Further, the Court does not find the ALJ cherry picked the bilateral upper extremity evidence mentioned above from the totality of Plaintiff's medical records. The ALJ directly addressed the large majority of the additional medical evidence cited by Plaintiff [*see* dkt. 14, p. 9], aside from the fact a chiropractor allegedly made Plaintiff's pain worse [R. 53], and that Dr. Panchal's May 17, 2017 examination (which the ALJ addressed at R. 26) wherein he recommended spinal fusion surgery also revealed weak hand grips and hyperactive reflexes in both arms, and that Dr. Panchal gave Plaintiff a note to remain off work for 3 months. [R. 1377.] The Court does not find these omissions to constitute cherry picking, nor does the Court find these considerations would have altered the ALJ's opinion.

7

evidence, as she also cited Plaintiff's statements about his conditions [R. 26] as well as opinion evidence [R. 29].

Lastly, as part of his upper extremity argument, Plaintiff faults the ALJ for not seeking testimony from a medical expert in the face of unspecified "unclear evidence." [Dkt. 14, p. 11.] The Social Security Regulations state that an ALJ will request additional evidence only when the available evidence is insufficient to make a disability determination. 20 C.F.R. § 404.1527(c)(3). The Court does believe the ALJ found the evidence in the instant matter to be unclear in any way. Nor was it insufficient to make a disability determination. Rather, the ALJ found that Plaintiff's subjective complaints were not supported by the objective evidence. When the ALJ asked Plaintiff's counsel to point her to the evidence of Plaintiff's arm limitations and Plaintiff's counsel directed the ALJ to Plaintiff's subjective complaints, the ALJ commented, "…I see those subjective complaints, but then it doesn't kind of break down through these objective findings…I'm not saying he's not reporting pain, but I'm just looking to see if there's atrophy or loss of sensation or muscle weaknesses or good ranges of motion (*i.e.*, corroborating objective evidence)." [R. 45-46.] Indeed, the supporting evidence was not unclear, it was just nonexistent. The ALJ in this case felt she had sufficient evidence to make a decision without calling an additional medical expert, and indeed she was able to make that decision.

Moreover, a court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citations omitted). Accordingly, "'a significant omission is usually required'" before the court will find that the agency failed in "'developing the record fully and fairly.'" *Nelms*, 553 F.3d at 1098 (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)). An omission is significant "only if it is prejudicial" and mere "'conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.'" *Nelms*, 553 F.3d at 1098 (citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir.1997) and *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir.1994)). Here, Plaintiff identifies no specific

8

gap in the record a medical expert would have filled in, additional evidence a medical expert would have provided, or equivalency a medical expert might have testified to. *See* 20 C.F.R. § 404.1512(a) (claimant bears burden of submitting evidence proving disability). In short, the Court does not find a significant or prejudicial omission in this case due to the lack of any medical expert testimony concerning Plaintiff's upper extremities, and will not remand this matter on that basis. The Court will uphold the "reasoned judgment" of the ALJ in not calling a medical expert to testify on the Administrative Record at hand. *Nelms*, 553 F.3d at 1098.

In sum, Court declines to remand this matter based on the ALJ's treatment of Plaintiff's upper extremities.

### 3.2. Concentration and Attention Deficits

Next, Plaintiff takes issue with the ALJ's treatment of Plaintiff's concentration and attention deficits, alleging error in that "the ALJ failed to include any non-exertional limitations in the RFC assessment." [Dkt. 14, p. 12.] Here Plaintiff strings together some symptoms (*i.e.*, Plaintiff feels best laying down; has headaches several times a week for a few hours; needs to sleep when he gets a headache; cannot socialize or play with his children due to pain; and ensures dizziness and sleepiness as side effects of his medications) to infer he might be unable to meet the on-task or attendance requirements of full time employment. [Dkt. 14, p. 14.] Although there is no clear evidence Plaintiff would be unable to meet the demands of full-time employment, the ALJ did address the issue of job availability even with several mental limitations added to Plaintiff's RFC [*see* R. 29, 31], so this argument is not a basis for remand.

However, stepping back and viewing Plaintiff's argument a bit more broadly, the Court was able to tease out the following, although it is not as eloquently stated: it seems Plaintiff's quarrel with the ALJ's opinion here is the conflict between the ALJ finding severe mental impairments, yet finding no limitations stemming from those impairments. The Court will also address this broader concern.

9

In the instant case, the ALJ found Plaintiff suffered from the severe impairments of depression and anxiety [R. 23], but then went on to craft an RFC that contained no allowances for these mental impairments [R. 25]. However, the ALJ also twice cited to Plaintiff's medical records to note that Plaintiff continually denied any ongoing symptoms of depression or anxiety. [R. 24, 28 (both citing R. 833, 917, 1396, 1398).] She also noted that Plaintiff was described as alert with intact memory, as well as pleasant and cooperative with normal affect. [R. 24 (citing R. 814, 917, 1367, 1375), 28 (citing R. 833, 1395).] The ALJ then went on to specifically note that "even if [Plaintiff] was provided with mental limitations of work limited to simple and routine tasks; no tandem work; no work where the machine sets the pace or work on an assembly line; but can do work of a variable rate, in the above RFC, the vocational expert testified that he could still do the above jobs." [R. 31; *see also* R. 29 (same).]

Backing up a bit, it is important to understand that "[a] severe impairment is one that significantly limits an individual's ability to perform basic work activities." *Million v. Astrue*, 260 F. App'x 918, 922 (7th Cir. 2008); *see also*, 20 C.F.R. § 404.1520(c); SSR 16-3P. "If an impairment is considered to be severe, it must be included in the residual functional capacity assessment, and if it is not included, the ALJ's decision is impermissibly internally contradictory." *Desiree B. v. Saul*, 2019 WL 6130814, at *3 (N.D. Ill. Nov. 19, 2019) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991)) (internal signals omitted); *see also, Givens v. Astrue*, 251 F. App'x 561, 567 (10th Cir. 2007) (same).

Here, however, the ALJ's opinion does not suffer the same pitfalls as the cases cited above requiring remand. The case at hand is distinct in that the ALJ went above and beyond to not only detail the medical evidence in support of her opinion that Plaintiff did not suffer from ongoing mental symptoms that needed to be accommodated in the RFC, but she also acknowledged the close-call-nature of her decision not to include any mental limitation within the RFC in spite of the severe status of Plaintiff's depression and anxiety when she found that Plaintiff could still perform jobs existing in significant numbers in the national economy even if she included significant mental limitations within

10

the RFC. [R. 31;[7] *see also* R. 29 (same).] The ALJ gave the evidence (or lack thereof) of Plaintiff's mental impairments full consideration, and the Court is able to trace the path of her reasoning related to her treatment of these issues. Moreover, any error here (the Court does not believe there is any) would be considered harmless because the hypothetical mental limitations would not have changed the ability of Plaintiff to find work.

The Court will not remand on the basis of the ALJ's treatment of Plaintiff's mental limitations.

### 3.3. Dr. Patel's Opinion

Finally, Plaintiff takes issue with the ALJ's treatment of the opinions of treating physician Dr. Ritesh Patel, M.D. On March 22, 2018, Dr. Patel completed a medical source statement in which he opined on a number of work-preclusive limitations. [R. 938-41.] Plaintiff asserts the ALJ wrongly determined Dr. Patel's opinions to be unsupported by the medical record.

The ALJ gave Dr. Patel's opinion no controlling or great weight because it was inconsistent with the other record opinions, such as the finding of the state-agency physicians, and because there was a lack of medical evidence support for Dr. Patel's conclusions, including by Dr. Patel's own clinical notes. [R. 29.] The ALJ then cited specific examples of how some of Dr. Patel's restrictions were not supported by the record. *Id.* The ALJ noted that "Dr. Patel lists depression and anxiety with claimant looking for treatment" but that the "physician's own clinical notes did not describe mental or mood disturbance to this level." *Id.* The ALJ also noted that "Dr. Patel also writes that the claimant has severe pain, which causes frequent attention and concentration distraction. However, as stated directly above, there was no indication of cognitive loss documented in the medical evidence." *Id.* Plaintiff points to no record evidence that would support Dr. Patel's conclusions, nor has the Court independently located any; Plaintiff has not undermined the ALJ's conclusions about Dr. Patel's

---

[7] The ALJ specifically found that "even if [Plaintiff] was provided with mental limitations of work limited to simple and routine tasks; no tandem work; no work where the machine sets the pace or work on an assembly line; but can do work of a variable rate, in the above RFC, the vocational expert testified that he could still do the above jobs." [R. 31.]

11

opinions. *See Herrman v. Astrue*, 2010 WL 356233, at *12 (N.D. Ill. Feb. 1, 2010) (Judges are not "archaeologists consigned to excavating masses of paper in search of possibly revealing information that might benefit the party whose briefs provided no clue of where to dig.") (citing *Northwestern Nat. Insurance Co. v. Baltes*, 15 F.3d 660, 662-63 (7th Cir. 1994)); *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."); *Carter v. Astrue*, 413 F. App'x 899, 906 (7th Cir. Mar. 4, 2011) ("[i]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.'") (citations omitted). Moreover, the Court finds it telling that when Dr. Patel was specifically given a chance to list the corroborating evidence upon which he relied in forming his opinions (check boxes indicate he could have chosen Plaintiff's history and medical file; progress and office notes; physical therapy reports; physical examinations; laboratory reports or other tests; X-rays, CT scans, or MRIs; consultative medical opinions; psychological evaluations, tests, reports, or opinions; or other) he failed to indicate he relied on any other supporting evidence. [R. 941.] Plaintiff may wish the ALJ weighed Dr. Patel's opinion differently, but the Court finds the ALJ's analysis and conclusions of Dr. Patel's opinions to be well-reasoned and well-supported. The Court will not remand on this basis.

In a similarly underdeveloped argument, Plaintiff devotes two sentences to noting that "the ALJ fail[ed] to consider any of the regulatory factors…" related to Dr. Patel. [Dkt. 14, p. 15.] In assessing opinions of treating sources, the ALJ must consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the opinion. *See* 20 C.F.R. § 404.1527(c)(2). Plaintiff himself does not even discuss these factors, once again leaving the court to scour the record to determine whether the ALJ did an adequate job.[8] While a discussion of these factors helps to ensure

---

[8] Other than noting the ALJ allegedly failed to consider the regulatory factors, Plaintiff fails to devote any effort to developing this point, and has thus waived the argument. *Carter*, 413 F. App'x at 906 ("[i]t is not this court's

adequacy of review and permit a claimant to better understand the disposition of his case, the failure to explicitly discuss every factor is not grounds for remand here. The ALJ's opinion does, in fact, point out that Dr. Patel was a treating physician[9] (the Court can find no specialty of Dr. Patel, and Plaintiff has pointed the Court to none); lists the earliest date Plaintiff saw Dr. Patel;[10] discusses the nature and extent of some of Dr. Patel's treatment of Plaintiff; and details the consistency and supportability of Dr. Patel's RFC statement. [R. 27-30.] The Court finds that this is enough. However, even if the ALJ erred in her consideration of Dr. Patel's opinion, the error here is harmless because the Court finds the ALJ's discussion, in full, provides sufficient explanation and substantial evidence in support of her determination, even though the ALJ may have failed to comply with the terms of the regulation. The Court finds helpful here the language of the Sixth Circuit's decision in *Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804-05 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010)), finding that although ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), the ALJ did not have to do an exhaustive factor-by-factor analysis because the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times." Here, the Court finds the same; although the ALJ did not explicitly discuss every factor, she discussed enough of them to provide supportability for her decision to give no controlling or great weight to Dr. Patel's opinions. The Court will not remand on this basis.

Lastly, Plaintiff contends the ALJ erred when she noted that physical therapy and medication

---

responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.'"); *see also*, *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to…put flesh on its bones."). Nonetheless, the Court will address it briefly.

[9] Plaintiff identifies Dr. Patel as a "treating surgeon" [dkt. 14, p. 14], but this is erroneous. Plaintiff's spinal surgery was performed by John O'Toole, M.D., not Dr. Patel. [R. 836-39.]

[10] Dr. Patel's RFC statement lists that Plaintiff had been Dr. Patel's patient since January 2016 [R. 938-41 at 938], but the earliest date the Court could find – and it seems the ALJ could find [R. 27] – that Plaintiff saw Dr. Patel is August 19, 2016. [R. 916-18.] As to the frequency of examination, it seems Plaintiff saw whichever doctor at Suburban Medical Center (Dr. Patel's practice group) was available when he made appointments. [*See* R. 1430-54.]

13

were conservative treatments. [Dkt. 14, p. 15.] Surgery, Plaintiff notes, is not conservative. *Id.* But the ALJ did not ignore Plaintiff's surgery, nor claim surgery was conservative. [R. 27 (detailing Plaintiff's "C1 laminectomy and C1-2 posterior arthrodesis with autograft and instrumentation").] All the ALJ did was note that physical therapy and/or medication were conservative methods of treatment for Plaintiff's pain. [R. 29 ("claimant continued to report some level of pain symptoms, but these subjective symptoms were treated conservatively with physical therapy and/or medication. The claimant was documented as reporting some relief of his symptoms with these modalities").] In this regard, the ALJ is entirely correct. *See Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (noting doctor's letter stating "that 'conservative treatment' includes many different types of treatment, including pain medication"); *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018) (referring to doctor notes of "injection therapies or other conservative pain management approaches" as compared to "a second surgery"); *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (characterizing physical therapy as conservative); *Burnam v. Colvin*, 525 F. App'x 461, 464 (7th Cir. 2013) (same). As the ALJ's opinion addressed both Plaintiff's conservative treatments and his more invasive interventions, the Court does not consider this evidence cherry picking. Nor is it grounds for remand.

In sum, the Court cannot remand based on the ALJ's treatment of Dr. Patel's opinions.

4. Conclusion

Plaintiff's motion for summary judgment [dkt. 14] is DENIED; Defendant's motion for summary judgment [dkt. 22] is GRANTED. The Court affirms hereby the final decision of the Commissioner denying benefits.

**ENTERED: 11/18/2020**

Susan E. Cox,
United States Magistrate Judge